The State of Missouri ex rel. Baker, Attorney-General, v. Fiala.

THE STATE OF MISSOURI *ex rel.* ANDREW J. BAKER, ATTORNEY-GENERAL, *v.* JOHN T. FIALA.

1. *Elections — County treasurer, appointed in January, 1871, entitled to office as against one elected in November.* — A. was elected county treasurer of St. Louis county in November, 1870. B. was appointed treasurer in January, 1871. In *quo warranto* to test the title of A. to the office, *held,* that the election in November was illegal and void; that notwithstanding that election, the office was vacant on January 5, 1871, and that B. was properly appointed to fill the vacancy.

The clause of the act of March 3, 1857, fixing on the first Monday of August, 1858, and every six years thereafter, as the time for the election, was, in its designation of the day of the week for the election, in conflict with section 2, article II, of the present State constitution, and was therefore, so far forth, repealed; but the constitution did not affect the six years provided for the treasurer's term of office. And the Legislature was authorized to alter the law as to the day of the week, and fix on the Tuesday following the first Monday in August as that for the election. (Sess. Acts 1865-6, p. 88.) Hence the day for election was properly in August, and not in November.

2. *Elections — County treasurer — Act of March 19, 1866, a general and not special law relative to the time of holding county, town and city elections.* — The act of March 19, 1866 (Sess. Acts 1865-6, p. 88), is not void as being in conflict with that part of section 27, article IV, of the State constitution which prohibits special legislation. Nor was it unconstitutional as reviving a special law. The act of March 3, 1857, was never revived by *it.*

3. *County treasurer — Elections — Act of March, 1857, not repealed by section 1, chapter 38, Gen. Stat. 1865, or by act of March 22, 1870.* — The act of March 3, 1857, was not repealed either by section 1, chapter 38, Gen. Stat. 1865, or the act of March 22, 1870 (Sess. Acts 1870, § 35). Neither of the last-named enactments had any reference to the local act of 1857. The object of that of March 22, 1870, was to amend the general law in relation to county treasurers (Gen. Stat. 1865, ch. 38, § 1). But, even supposing that the act of March, 1870, had been enacted as a new law throughout, and that its provisions were in conflict with the prior local act, it did not have the effect of repealing it by implication, as nothing indicates an intention on the part of the Legislature to do away with the local act. Section 2 of the act of March, 1870, in terms repealing all acts and parts of acts in conflict with it, refers only to general, inconsistent laws. It was no part of the purpose of the act to touch the question of elections or the term of office.

## *Petition for Quo Warranto.*

*A. W. Slayback,* with *Baker,* Attorney-General, for petitioner.

The object of the Legislature was to create uniformity in the several counties requiring a treasurer, and courts must so con-

strue the several enactments as to carry out that intention in good faith. Had the Legislature intended to except the county of St. Louis from the system of biennial elections for county treasurers in the several counties, such intention should have been expressed by declaring said law not applicable to St. Louis county, as is done in the law concerning assessors (Gen. Stat. 1865, ch. 12, § 1). Standing as it does, the only law in force under which such an election for treasurer can now be held, and no other form of election being provided by law under the existing constitution, it is fair to presume that the Legislature did not intend any omission to provide for the election of a county treasurer in St. Louis county. Hence the general law applies as well and is as much in force in St. Louis county as any other, and Mr. Mathias was legally elected upon the proper day, and is entitled to the office by virtue of his said election.

In 38 Mo. 534, in the Vastine case, which has been cited as asserting a contrary inference, the Supreme Court held: "But it may be regarded as equally well settled that a subsequent statute, which is clearly repugnant to a prior one, necessarily repeals the former, although it does not do so in express terms. 'Leges posteriores priores abrogant.'" Under that decision the law of 1857 was unquestionably repealed. It was not essential that it should be repealed in express words. It was repugnant to the new constitution and to section 1, chapter 38, of the statutes — laws which were subsequent to 1857, and which inaugurated a system of uniformity throughout the entire State for the election of county treasurer at each biennial general election; and if this general system had not been designed and intended to operate in St. Louis county, it would have been mentioned in the act that its provisions did not apply to St. Louis county. In the Vastine case the court was considering a law which provided for the election of a public administrator in several counties therein named (one of which was St. Louis county), at each general election. There was no repugnancy between the law there construed and the law of the General Statutes, which it was contended had operated as a repeal of that previous act of the Legislature under which Vastine had been elected.

The probate judge wished to appoint a public administrator, notwithstanding Vastine's election by the people. The Supreme Court gave sanction rather to the election than to such appointment. But in the Pearcy case — a case wherein a system of uniformity had been established by the later enactment — the court held that the facts of the Vastine case did not apply. Those facts are still less applicable in the treasurer's case. Here, in order to maintain the assertion that the new constitution and the act of March, 1866 (Sess. Acts 1866, ch. 38, § 1), do not apply to St. Louis county, it is necessary to maintain the theory that the law of 1857 is still in force, and that it excludes the operation of the general law in this county.

But if the special act of 1857 is to be held as still in force, it is not only at war with the clause of the new constitution forbidding elections on Monday, but its enforcement would require additional legislation after the adoption of the new constitution, since it is inimical to the whole scope, theory, and intention of that instrument. The aim of that constitution is to do away with the expense and trouble of special elections, the expense and embarrassments of special legislation, and the expense of sophistical constructions of statutes by the courts. (See art. IV, § 27.)

Under the last clause the general assembly proceeded to remodel the laws concerning the election of county treasurer in the several counties of the State (St. Louis not excepted), and they made and passed and approved a general law covering the case.

Section 2 of article II of this constitution put an end to the special law of 1857, under which Risley was elected. After this, that law could not possibly be in force unless revived by subsequent legislation. It may be claimed that the act approved March 19, 1866, relative to the time of holding county, town and city elections, did revive the operation of the special law of 1857. But this could not reconcile the act of 1857 with that other feature of antagonism in the new constitution concerning special legislation.

It is clear that if the original enactment of a law would militate against the constitution in existence at the date of its enactment, such a law would be unconstitutional and inoperative. It

is equally clear that an act intended to revive an obsolete statute can not be operative, if at the time of its supposed revival the original act itself would be repugnant to the constitution in force at the time of the supposed revival.

Now the new constitution took effect July 4, 1865. The act which it is claimed revived the act of 1857 took effect from and after March 19, 1866; consequently, since the original act of 1857 would have been unconstitutional and void if originally enacted on the 19th of March, 1866, its assumed revival would have been unconstitutional and inoperative. But there is nothing in the act of March, 1866, showing that the general assembly had in mind the act of 1857, concerning the treasurer of St. Louis, or that they intended to revive it.

If no day is now fixed by law for the election of county treasurer, it is to be fairly presumed that there is none to be held at all, and Fiala is to hold his office for life, and then the County Court must give it again for life, or during good behavior, to some other friend of theirs. This court has said that no such intention on the part of law-makers will be presumed. (State, etc., v. Pearcy, 44 Mo. 159; id. 162.)

There are grave and extraordinary reasons for bringing the cause directly before this honorable court. It is a small matter whether Mathias be treasurer of St. Louis county, but it is no small matter if there be no law for electing any treasurer whatsoever for the richest county, and that which pays the largest revenue, in the State. It is a matter of vast and urgent importance to the tax-payers of St. Louis county that the credit and regularity of its financial department be maintained, and that a final and summary conclusion and determination be reached with regard to the lawful custody of its treasure.

Even admitting, for the sake of argument, that there was a vacancy, had the County Court legal power to appoint? If the theory of respondent be true, that the general law as to county treasurers is inapplicable to St. Louis county, then they can not derive the power from that law. If they claim the power by anything in the special law of 1857, they have no such power under that law.

*H. A. Clover* and *R. E. Rombauer*, for respondent.

The election under which Mathias claims title was a mere volunteer election, and, being such, could give no title to the office to Mathias (State *ex rel*. McHenry v. Jenkins, 43 Mo. 265 ; State v. Robinson, 1 Kans. 17), and the County Court could declare a vacancy, which it lawfully might fill by appointment (Wagn. Stat. 410, § 4), and the respondent's title holding under such appointment is good. The office of county treasurer of St. Louis county, as the same now exists, is created and regulated by the act of 1857., according to the provisions of which it was to be filled by an election to be held on the first Monday in August every six years, after the first Monday in August, 1858. That act has never been repealed. It has not been repealed by section 2, article II, of the constitution, because that section provides in its first part for general elections only, and the election provided for by the act of 1857 is a local and special election. It has not been repealed by the last clause of that section, which provides that "no special election, State, county or municipal, shall be appointed to be held on Monday," because that clause is purely prospective in its operation. (Sedgw. Stat. and Const. Law, 490 ; Cass v. Dillon, 2 Ohio, 607.) The Legislature, therefore, might lawfully, as it did, by act approved March 19, 1866, and after the new constitution went into effect, provide that "all county, town and city elections, required by former or existing laws to be holden on Monday, shall hereafter be holden on Tuesday next succeeding the Monday specified in said laws as the day for holding said elections." (Sess. Acts 1865-6, p. 88.) Nor has the act of 1857, as amended by the act of 1866, been repealed by the first section of chapter 38 of General Statutes, which provides for biennial elections of county treasurers on the Tuesday after the first Monday in November ; because, according to section 5 of chapter 224 of the General Statutes, it is a mere continuation of the former general law on the subject of county treasurers, and, according to section 6 of the same chapter, does not repeal any act local in its character, and especially applicable to any particular county, as the act of

1857 clearly is. Nor is it repealed by " an act to amend section 1 of chapter 38 of the General Statutes of 1865 concerning county treasurers," approved March 22, 1870. That act, by its title as well as by its context, claims to be amendatory of the general law of 1865 only. It is so merely in one particular, by omitting the proviso that no person shall be elected to said office of treasurer more than two successive terms. The first section of the act of 1870 may be considered as substituted in place of the first section of the act of 1865, and that is all that the amendment and the repealing clause contained in the second section accomplishes. (1 Wagn. Stat. 410, § 1.)

The foregoing is all the legislation on this subject affecting the question under consideration.

There is no difference between the operation of the act of 1865 and its amendatory act of 1870 on the act of 1857 in this case, and between the operation of the act of 1865 (Gen. Stat. 1865, ch. 128, § 1) on another act of March 3, 1857, which this court had under consideration in Vastine v. McDonald, 38 Mo. 533. The two cases are almost identical in every particular. In the case of The State, etc., v. Pearcy, 44 Mo. 158, the court applies the same principles to a different state of facts, and removes all doubt as to what construction should be given to the operation of a subsequent general enactment on a preceding special act.

CURRIER, Judge, delivered the opinion of the court.

This is a proceeding in the nature of a writ of *quo warranto*, and is designed to test the right of the respondent to the office of treasurer of the county of St. Louis. He claims the office under and by virtue of an appointment by the St. Louis County Court, made January 5, 1871, to fill a supposed vacancy. If the vacancy in fact existed, it is not questioned that the court had the right to fill it; but if there was no vacancy, then the action of the court was nugatory and the respondent took nothing by the appointment. Whether or not there was an existing vacancy at the time of the appointment is therefore the ultimate question to be decided.

The act of March 3, 1857 (Sess. Acts 1856–7, p. 676), entitled " an act concerning the assessment and collection of the revenue in the county of St. Louis, and for other purposes," provided, among a variety of other things, that the treasurer of the county should be elected on the first Monday of August in the year 1858, and hold his office for the term of six years, and until his successor should be elected and qualified. It further provided (§ 9) that " on the same day, in every sixth year thereafter, a treasurer of said county should be elected for a like term." The act indisputably fixed an official term of six years, and provided for an election in August, 1858, and every sixth year thereafter. It seems to be conceded on all hands that if this act is now in force, the action of the County Court in the appointment of the respondent was warranted by law, and that the respondent is consequently legally entitled to hold the office.

The following agreement is filed in the cause: " It is agreed by counsel that the only issues intended to be presented to the court by the pleadings in this cause are:

" 1. Whether the act of March 3, 1857, has been repealed, either by the provisions of the new constitution or by subsequent statutory enactments.

" 2. Whether having been elected by receiving a majority of the votes cast of the qualified voters of St. Louis county at the general biennial election held in said county on the Tuesday after the first Monday in November, 1870, entitled one F. W. Mathias to the occupancy of said office; it being admitted that, if lawfully elected on said day, he has since properly qualified. That is, whether an election of county treasurer of St. Louis county could, under the law in force, be properly and lawfully held in St. Louis county on said day.

" 3. It is agreed that if F. W. Mathias was not legally elected on said day, a vacancy did exist on the 5th day of January, 1871, and that the County Court of St. Louis county did fill the same by appointing John T. Fiala, the respondent, and that he has since that day properly qualified."

It is quite apparent from the foregoing that no claim is set up in behalf of Mr. Mathias, asserting legal title to the office in

him in virtue of his election in November, 1870, unless that election was held in pursuance of law; nor is it claimed that the election was held in pursuance of law if the act of March 3, 1857, fixing the time for the election in August, is now in force. Thus we are brought back to that act, and to the question whether or not it has been repealed. The Attorney-General, in behalf of the State, takes the affirmative, and insists that the act has been repealed (1) by operation of the new constitution, and (2) by subsequent legislative enactments. I will now proceed to examine the grounds of this claim.

It is first insisted that the new constitution (article II, § 2) abrogates the act. There are two clauses in the section referred to which are supposed to have some bearing upon the present inquiry. The first provides that "general elections shall be held biennially on the Tuesday next after the first Monday in November;" the other, that "no special election, State, county or municipal, shall be appointed to be held on a Monday." It will at once be seen that provision is here made for two classes of elections — one general, the other special. The first has no connection with the present investigation, and for the reason that we are not upon the subject of general elections. The other — that relating to special elections — is germain to the issues raised by the pleadings. The constitution forbids the holding of special elections on Monday, but does not provide, as in case of general elections, on what particular day a special election may be held. That is left to the discretion of the Legislature, subject to the prohibition as to Monday.

But the act of March 3, 1857, as we have seen, appointed the election of treasurer to be held on Monday, namely: the first Monday of August, 1858, and every six years thereafter. This clause of the act is in conflict with the constitutional provision under consideration, and was therefore repealed by it. The two can not stand together, and the legislative provision must yield to the requirements of the constitution. It does not thence follow, however, as the relator seems to claim, that the entire act was repealed. No such result followed. The act was repealed only to the extent that it came in collision with the constitution. The

constitution does not affect the treasurer's official term, or any of his duties, relations, or responsibilities. These all remained intact. But this result followed, namely: that the office could not be filled through the medium of a popular election until the Legislature acted on the subject and appointed a day upon which an election could be legally held. Accordingly we find that the Legislature, at its session next following the adoption of the constitution, took the matter in hand, and by an appropriate general law enacted as follows: "All county, town and city elections required by former or existing laws to be holden on Monday, shall hereafter be holden on the Tuesday next succeeding the Monday specified in said law as the day for holding such elections." (Sess. Acts 1865–6, p. 88.) This act applies, and was manifestly intended to apply, to St. Louis county and to all the counties in the State similarly situated. It was evidently passed in view of the constitutional prohibition against holding special elections on Monday. Under it the election for county treasurer of St. Louis county would occur on the Tuesday following the first Monday of August in the year 1870, and not on the Tuesday following the first Monday of November of that year, the date of Mr. Mathias' supposed election.

It is suggested, however, that the act last referred to is void as being in conflict with that part of section 27, article IV, of the constitution which prohibits special legislation, and which requires the enactment of general laws wherever such laws may be applicable to the matter legislated upon. I fail to see the force of this objection. The act in question is a general law, and operates uniformly all over the State. It does not furnish one rule for one county and a different rule for another. Whenever an election was appointed by law to be held on Monday, the election was postponed to the Tuesday following.

Again, it is suggested that the act, if it has any force, revives special laws, and that it is subject to a constitutional objection on that ground. In reply to this suggestion it is sufficient to say that it did not revive the act of March 3, 1857, for the reason that that act was never suspended or repealed, so far as is shown. It was not suspended or repealed by operation of article II,

JANUARY TERM, 1871. 319

The State of Missouri ex rel. Baker, Attorney-General, v. Fiala.

section 2, of the constitution, as we have already seen. The repeal of a single clause in an act or section does not necessarily repeal the whole act. The fallacy of the objection lies in the contrary assumption — an assumption altogether gratuitous. The act of March 19, 1866, thus objected to, carries into effect the most manifest intention of the framers of the constitution.

Nor is there any force in the objection that the act of March 3, 1857, was repealed by the first section of chapter 38 of the General Statutes. There is nothing to indicate that the Legislature had in view the local St. Louis act, or any other local laws, when it adopted that chapter and section. Besides, the chapter is a mere reproduction of article I, chapter 46, of the act of December 4, 1855 (R. C. 1855, ch. 46). It is therefore to be construed as a mere continuation of an old law, and not as a new enactment. (Gen. Stat. 1865, p. 883, § 5.) For the purposes of construction it is to be treated as having been passed in 1855, two years before the act it is supposed to repeal became a law. In no view can chapter 38 of the General Statutes be regarded as coming in conflict with the local St. Louis act of 1857.

Again, it is insisted, and with much urgency, that the act of March 22, 1870 (Sess. Acts 1870, p. 35), repeals the act of March 3, 1857. This objection derives all its seeming force from a superficial view of the two acts. A careful comparison and examination of them dissipates the objection. Such a comparison and examination will show that the Legislature, in passing the act of March, 1870, had no reference whatever to the local St. Louis act of 1857. Its aim was not to overturn any local act, but to amend the general law in relation to county treasurers. Its title and context prove this. The general law, which it was proposed to modify by the amendatory act, forbids the election of the same person for "more than two successive terms." To repeal this clause was the sole object of the act of March, 1870, and that was accomplished. The repeal took the form of a re-enactment of section 1 of the old law *in hæc verba*, with the proviso or prohibitory clause left out. That was the whole of it. No other change was made or attempted. It was, in effect, a mere repeal of the proviso. In that view it was in no way in

conflict with the act of March, 1857. But assuming, for the sake of the argument, that section 1 of the act of March, 1870, had been enacted as a new law throughout, and that its provisions were in conflict with the provisions of the prior local act, was the local act thereby repealed by implication?

Repeals by implication are not favored. The rule in this State may be regarded as settled that a general statute, although inconsistent with the provisions of a prior local law, will not repeal the latter unless there is something in the general law, or in the course of legislation upon its subject-matter, that makes it manifest that the Legislature contemplated and intended a repeal. (Vastine v. McDonald, 38 Mo. 534; State v. Pearcy, 44 Mo. 159.) In the case at bar it does not appear that the Legislature, in enacting the law of March, 1870, had in view the local St. Louis act, nor is there anything in or connected with the act (§ 1) that indicates a purpose on the part of the Legislature to repeal or do away with the local enactment. In principle the case at bar can not be distinguished from the Vastine case. In State v. Pearcy the facts were different and a different conclusion was reached, but there was no abandonment of the undoubtedly correct principle announced in the Vastine case.

But the act of March, 1870, contained an affirmative repealing section in these words: "All acts and parts of acts in conflict with this act are hereby repealed." Do these words spend their force upon inconsistent general laws? or do they, in one breath, sweep away all conflicting local legislation as well? It would be dangerous, to say the least of it, to hold the affirmative of the latter proposition in a State where special legislation has abounded as it has in the State of Missouri. The repealing clause must be construed in connection with the whole act, and with reference to the intention of the Legislature in enacting it. The same rule of construction is to be applied to it that is applied to the main body of the act. The word "repealed" is not necessarily to be taken in its most sweeping and absolute sense. In Rex v. Rogers, Lord Ellenborough says: "This word is not to be taken in an absolute, if it appear upon the whole act to be used in a limited sense." (10 East, 573; and see Canndon v. Anderson, 1 T. R.

723; Sedgw. Stat. and Const. Law, 129.) The whole act, then, is to be consulted to determine the proper construction to be placed upon the repealing clause, however comprehensive the terms may be in which that clause is phrased. This is a doctrine of common sense as well as of the law.

Apply the principle to the act of March, 1870. We have already seen that the sole and only object of that act was to get rid of a proviso in a general law which restrained any particular treasurer from holding the office for more than two successive terms. The proviso was not in words repealed, but it was taken out of the statute in the manner already described. The obvious and legitimate object of the repealing section was to abrogate all general laws which imposed the objectionable prohibition. It is patent, upon a comparison of the law amended and the law amending it, that it was no part of the purpose of the amendatory law to touch the questions of election or the term of office. These were matters wholly foreign to the purposes of that enactment. In my judgment, the operation of its repealing clause should be limited at least to general laws, if not strictly to the subject-matter of the abolished proviso. Perhaps the latter is the safer rule where the repealing clause, as in this case, is expressed in general terms, without any specific designation of the particular statute intended to be operated upon.

It may here be remarked that the facts connected with this litigation serve to make manifest the mischief and confusion attendant upon special legislation. I have examined the case with no bias in favor of legislation of that description. Courts, however, are bound to declare the law as they find it. It is the business of the Legislature, and not of the courts, to amend the laws if the public good require it.

The conclusions I have reached have already been indicated. I am of the opinion, and entertain no doubts of its correctness, that neither the provisions of the constitution nor any of the acts passed under it, to which our attention has been called, operate an abrogation of the local St. Louis act of March 3, 1857. The act being still in force, it determines the official term of the treasurer of St. Louis county, and fixes the time for his election,

except as the act has been amended by the subsequent act of March 19, 1866, substituting the Tuesday after the first Monday of August as the day of election, in place of the first Monday of that month.

The result is that the application for a judgment of ouster must be refused. The other judges concur.